### UNITED STATES PAPER EXPORTS ASS'N v. BOWERS.

#### No. 37.

Circuit Court of Appeals, Second Circuit.

Dec. 16, 1935.

F. W. H. Adams, U. S. Atty., of New York City (Leon E. Spencer, Asst. U. S. Atty., of New York City, of counsel), for appellant.

Donald Horne, of New York City, for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

This action seeks to recover income taxes alleged to have been wrongfully exacted from United States Paper Exports Association, a New York corporation, which for brevity will hereafter be referred to as United. Originally, another plaintiff, American Paper Exports, Inc., hereafter referred to as American, was joined with United in the action. American had been organized to take over the assets and liabilities of United, and it did so as of June 29, 1918. On the same date it acquired all the shares of the capital stock of United. A consolidated return for the calendar year 1918 was filed for both corporations, which included the income of American for the last half of the year and the income of United for the first half. American had no income prior to July 1st, and United had none thereafter. The tax shown to be due by the consolidated return was paid, but subsequently the commissioner determined that the consolidated return should have covered only the last half of the year. He required a separate return of United's income for the first half of the year, and this resulted in a deficiency assessment against United, which American paid under protest in 1925. This is the tax sought to be recovered. The case was before this court on a prior appeal from a judgment which dismissed the complaint for insufficiency. American Paper Exports v. Bowers, 54 F.(2d) 508. We there held that a single consolidated return for the year was proper, and reversed the dismissal of the complaint. After the cause was remanded, American withdrew as a party plaintiff and the action was prosecuted by United alone. It was tried by the court and a jury of one, each party moving for a directed verdict. The plaintiff's motion was granted and judgment entered accordingly. This judgment is now brought before us by the defendant's appeal.

The appellant argues that the present record does not show affiliation of the corporations because it was not proved that American owned all the shares of United after June 29, 1918. This contention clearly mistakes the record. Witness McIntosh testified that 4,000 shares of stock of American were issued to the stockholders of United in exchange for their shares in United in accordance with the provisions of the agreement and bill of sale.

■ We are earnestly urged to overrule our decision in the prior appeal and to hold that a separate return was required of United's income for the period prior to affiliation. However, no new arguments have been presented, and no later author-

ities are relied upon except Arnold Constable Corporation v. Commissioner, 69 F.(2d) 788 (C.C.A.2). That decision is not to the contrary. We there held that a separate return of a subsidiary corporation for a fractional part of a year preceding affiliation was not a return for a "taxable year" within the meaning of provisions relating to carrying forward net losses. Whether the separate return was proper, or whether a single consolidated return should have been filed, was not debated or considered. Until advised by higher authority that the American Paper Exports Case was wrongly decided, we see no reason to overrule it.

 The appellant's third contention is that the plaintiff should not be allowed to recover because recovery of the tax in suit will allow its income for the period ending June 29, 1918, to escape any taxation whatever. This presents a question which was not before us on the prior appeal. For an understanding of it a further statement of facts is required. The consolidated return showed a tax liability of $33,071.33 and this sum was paid by American. A fund of about $56,000 had been deposited by United with American, and the latter had agreed to pay all taxes "properly levied" against United on the basis of its income for the first six months of 1918, and to distribute the balance of the deposit among United's shareholders according to their holdings prior to exchanging their United shares for shares of American. On May 12, 1925, the commissioner refunded to American $30,841.49 of the 1918 tax, on the theory of an overpayment of this amount by reason of the inclusion in the consolidated return of United's income for the first six months of the year. He assessed against United a tax of $44,830.20 on its income for this period. This was paid by American under protest and a claim for refund was filed and rejected. The judgment appealed from is for this sum, with interest from the date of payment, June 3, 1925.

On the hypothesis that a single consolidated return was proper, as held in the American Paper Exports Case, it must be conceded that the sum of $30,841.49 was wrongly refunded to American and the tax of $44,830.20 was illegally assessed against United. If the latter sum is now recovered by United, it will mean that its income for the period ending June 29, 1918, will bear no tax whatever, and that the persons who were shareholders of United prior to exchanging their holdings for shares of American will get substantially all of the $56,000 deposited with American for the payment of taxes "properly levied" against United on the basis of this income. When $30,841.49 of the tax paid on the consolidated return was refunded to American, the latter was obligated to hold it on the same terms as the original deposit. The theory advanced in the brief of the appellee that it was freed of the trust and became a windfall to American is wholly unsound. It necessarily fell back into the deposited fund, and we must assume that it was used by American to pay the tax now in dispute. If that payment be recovered by United, it also must be held on the same trusts as the original deposit. Hence it is apparent that the real parties in interest are the former shareholders of United; they were to bear the burden of taxes "properly levied," and they are to get distribution of any surplus remaining in the fund. On the basis of the consolidated return, the United States should have retained the $30,841.49 which it refunded to American and should never have collected the .$44,830.20 paid by the shareholders out of the fund held by American. If equity is to be done, the United States should be required now to repay only the difference between these sums.

 Although the action is at law against the collector, it is governed by equitable principles and is essentially an action for money had and received against the United States, out of whose treasury recovery will come in the end. Lewis v. Reynolds, 284 U.S. 281, 283, 52 S.Ct. 145, 76 L.Ed. 293; New York Life Ins. Co. v. Anderson, 257 F. 576, 577 (D.C.S.D.N.Y.). Speaking of an action for money had and received, Lord Mansfield said, in Moses v. Macferlan, 2 Burr, 1005, at 1010: . "It is the most favorable way in which he [the defendant] can be sued. He can be liable no further than the money he has received; and against that, may go into every equitable defence upon the general issue; he may claim every equitable allowance. * * * in short, he may defend himself by everything which shows that the plaintiff, ex æquo et bono, is not intitled

to the whole of his demand, or to any part of it." To the same effect is the language of Mr. Justice Sutherland in Myers v. Hurley Motor Co., 273 U.S. 18, 24, 47 S.Ct. 277, 71 L.Ed. 515, 50 A.L.R. 1181. These principles have been strikingly illustrated by actions brought for the recovery of illegally collected taxes. In Lewis v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293, it was held that, although the taxpayer's claim was based on an erroneous disallowance by the commissioner of a claimed deduction and the statute of limitations barred a new assessment, the United States was entitled to retain payments when they did not exceed the amount which might have been properly assessed and demanded. In Crocker v. Malley, 249 U.S. 223, 39 S.Ct. 270, 63 L.Ed. 573, 2 A.L.R. 1601, the plaintiffs paid an income tax based on their erroneous classification as a joint-stock association, but they were permitted to recover only the excess above the amount they would have had to pay had they been taxed as trustees, as they should have been. See, also, Rockwood v. United States, 38 F.(2d) 707, 710 (Ct.Cl.); Champ Spring Co. v. United States, 47 F.(2d) 1, 3 (C.C.A.8), certiorari denied 283 U.S. 852, 51 S.Ct. 560, 75 L.Ed. 1459; New York Life Ins. Co. v. Anderson, 257 F. 576 (D.C.S.D.N.Y.).

The appellee argues that any tax liability of United as a member of the consolidated group was satisfied by payment and was not revived by the erroneous refund. See Kelley v. United States, 30 F.(2d) 193, 194 (C.C.A.9); Woolner Distilling Co. v. United States, 62 F.(2d) 228 (C.C.A.7). However that may be, the very authorities relied upon by the appellee clearly show that taxes erroneously refunded may be recovered by the United States as money paid out by its agents without legal authority. See, also, Talcott v. United States, 23 F.(2d) 897, 901 (C.C.A.9). Had the refund been made direct to United, the United States would have had an enforceable right against United to recover the refund and could have used this right in defense pro tanto of United's present action. Champ Spring Co. v. United States, 47 F.(2d) 1, 3 (C.C.A.8). See, also, Myers v. Hurley Motor Co., supra, 273 U.S. 18, at page 24, 47 S.Ct. 277, 71 L.Ed. 515, 50 A.L.R. 1181; Meredith v. Richardson & O'Neal, 10 Ala. 828, 836; Kingston Bank v.

Eltinge, 66 N.Y. 625, 627; Barr v. Craig, 2 Dall. (Pa.) 151, 155, 1 L.Ed. 327; Dennis v. Graf, 31 Wis. 105, 109; but cf. Donaho's Adm'r v. Witherspoon, 29 N.C. 351, 353. But it is argued that in any event an erroneous refund to American cannot create any liability on the part of United. This is answered by considerations already noted, namely, that the refund was received by American upon the same trusts as the original deposit and in so far as not used to pay United's taxes must be turned back to United's former shareholders; and that United's recovery in the present action will inure solely to their benefit. These shareholders, in whose behalf United sues, should therefore be treated as owing to the United States the refund received by American for their benefit. In equity and good conscience the government has a better right than have they, or the nominal plaintiff, to the sum of $30,841.49 which was due under the consolidated return and refunded in error.

Accordingly, the judgment will be reversed, unless the plaintiff shall file a remittitur in that amount; and in that event it will be affirmed.